UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RICHFIELD OIL & GAS COMPANY,

 Plaintiff,

 -against-

SOLOMON MARKOWITZ, MORRIS
BARENBAUM, AND MARKO CAPITAL CORP.,

 Defendants.

Civ. No.

**COMPLAINT AND
JURY DEMAND**

Plaintiff Richfield Oil & Gas Co. ("Richfield"), by its attorneys Hinshaw & Culbertson,

for its Complaint against Solomon Markowitz, Morris Barenbaum and Marko Capital Corp.,

alleges as follows:

## NATURE OF THE ACTION

1.     This action seeks to recover $325,000.00 obtained by these defendants who,

acting in concert with others, perpetrated a deliberate and coordinated fraud on Richfield.  This

fraud, often referred to as an "advance fee scheme," involved the detailed and elaborate claims

by representatives of Solomon Markowitz and Marko Capital that Marko had the ability to

procure for Richfield Standby Letters of Credit ("SBLC") in the total amount of $24,000,000,

which would then serve as the basis for a loan of $8,500,000 to Richfield.  For its supposed

services, Richfield was required to pay an initial and "advance" amount of $350,000.00 which

would be used to obtain the SBLC.

2.     Richfield honored its obligations, arranging for a payment of $350,000.00 to be

wired to its consultant, Corban Ventures.  At least $325,000.00 (the "Escrow Funds") was then

transferred into the attorney trust account of the escrow attorney, Morris Barenbaum.  Defendant

Barenbaum then ensured the success of the scheme by wrongfully disbursing those funds to his

associates, Solomon Markowitz, David Binet and Arthur Tiberi, not in accordance with and for purposes of the transaction but instead to and for the personal benefit of these defendants and their associates, with $175,000 being paid to Solomon Markowitz alone.

3.      Contrary to all of their claims and representations, the defendants provided no SBLC. Instead, they offered only increasingly incredible excuses and tried to con Richfield out of even more money. By the fall of 2012, the defendants simply refused to respond to the plaintiff's demand for repayment of the monies that were taken.

4.      Through these coordinated efforts of defendants Markowitz, Barenbaum and others, the plaintiff was duped into paying hundreds of thousands of dollars that the defendants then pocketed.

**5.**      To recover for the company and its shareholders those amounts that the defendants obtained and the additional costs and damages associated with the fraud, Richfield is herein asserting claims based on both the misappropriation of its funds, the defendants' breach of their agreements and unjust enrichment.

## PARTIES

6.      Plaintiff Richfield Oil and Gas Company is a Nevada corporation with its principal place of business at 15 West South Temple in Salt Lake City, Utah.

7.      Defendant Morris Barenbaum is an attorney with a law practice located at 1205 47th Street, Brooklyn, New York. Barenbaum was the escrow agent designated by the defendants in this transaction, received the funds that were obtained from the plaintiff, and disbursed the bulk of those funds to or for the personal benefit of himself and his associates.

8.      Defendant Solomon Markowitz resides at 1933 52nd Street in Brooklyn, New York. On information and belief, Mr. Markowitz at all times exercised complete and actual

2

dominion and control over Marko Capital Corp. in relation to the transaction at issue, and such dominion and control was used to commit the fraud that injured the claimant and to render that entity insolvent.

9.      Defendant Marko Capital Corp. is a New York corporation that is owned and controlled by Solomon Markowitz, with an office located at 5014 16th Avenue in Brooklyn, New York. Marko Capital Corp. entered into the contract with plaintiff pursuant to which it agreed to procure and provide $24 million in Stand By Letters of Credit ("SBLC") which would then form the basis for a loan of $8.5 million to Richfield.

## JURISDICTION & VENUE

10.      Jurisdiction exists with this Court pursuant to 28 U.S.C. §1332 et seq. because the parties are citizens of different states and the amount at issue exceeds $75,000.00.

11.      Personal jurisdiction over the defendant exists under § 301 and § 302 of the New York Civil Practice Law and Rules and Rule 4 of the Federal Rules of Civil Procedure.

12.      Venue is proper in this District because the defendants operate their businesses in and reside in Brooklyn, New York.

13.      This dispute is also the subject of an arbitration proceeding against the defendants' associates Arthur Tiberi, David Binet, James Helfer and Corban Ventures, based on the provision in the Marko Agreement which requires arbitration of disputes. This federal action is being initiated because Defendants Morris Barenbaum, Solomon Markowitz and Marko Capital have asserted that they are not signatories to the Marko Capital agreement and may not be compelled to arbitrate.

3

## BACKGROUND

### Defendants Persuade Richfield to Enter Into the Marko Agreement Transaction

14.     In or about January 2012, agents of Marko Capital Corp. entered into a written agreement with Corban Ventures LLC, consultant for Richfield, pursuant to which Marko agreed to provide Stand By Letters of Credit ("SBLC") in the total amount of $24 million which would be used to fund "a fully secured loan to Richfield Oil & Gas Company." A copy of the Marko Agreement is attached hereto as Exhibit A.

15.     Richfield was induced and persuaded to participate in this transaction based on extensive, detailed and false representations made by Solomon Markowitz, Arthur Tiberi and David Binet, each and all acting as representatives of and agents for Marko Capital. Those representations included statements by Mr. Markowitz that Marko Capital had provided SBLCs to others in the past and had the ability to obtain $24 million in SBLCs for the transaction with Richfield, that Marko Capital had the ability to provide assets that would support the issuance of SBLCs in the total amount of $24 million, that "Marko Capital has agreed to provide the assets to support the SBLCs and to act as co-applicant with Corban in issuing such SBLCs" in the total amount of $24 million, and that "Marko has previously confirmed with Deutsche Bank, Germany" that the bank was willing to issue SBLCs in accordance with the terms of the agreement.

16.     The statements made by Markowitz, Tiberi and Binet regarding their and Marko's capabilities, assets, ability to obtain SBLCs in a total amount of $24 million, and arrangements with Deutsche Bank were false, were made by the defendants with knowledge of their falsity, and were made to induce Richfield to participate in the purported SBLC transaction.

4

17.     In reliance on the representations of the defendants, made directly and through their agents and representatives, Richfield agreed to proceed with the SBLC transaction with Marko Capital and authorized the entry into the Marko Agreement.

18.     The Marko Agreement was executed by Arthur Tiberi as "Agent for Marko" and as "authorized by Marko."

**Richfield Transfers $350,000 to the Escrow Account,
the Bulk of Which is Taken by the Defendants**

19.     The Marko Agreement expressly provides that Marko Capital "has agreed to provide the assets to support the SBLCs and to act as a co-applicant with Corban in issuing such SBLCs," that "Marko has previously confirmed with Deutsche Bank, Germany or other financial institution as mutually agreed the Issuer's willingness to issue the SBLC's in accordance with the terms and timeframes herein," and that Marko agrees to apply for two SBLCs which "shall be made available to Corban in the amount of Five Million US Dollars … and Nineteen Million US Dollars."

20.     Pursuant to paragraph 2 of that Marko Agreement, "in consideration of Marko's role as described herein," to wit, the procurement of the SBLCs, Marko was to receive a fee of "13% of the face value" of those SBLCs.

21.     According to paragraph 2, amounts "shall be paid into the escrow account with timing as described in Exhibit D."

22.     Exhibit D to the agreement provides that $325,000 was to be paid "to the following account: Morris Barenbaum IOLA." According to Exhibit D, that amount was to be paid "at request of issuance of $5 million SBLC."

23.     Based on the claims and representations of defendants that Marko had arranged for the issuance of the SBLCs and that substantial funds were needed and would be used for the

5

actual issuance of the SBLCs, Richfield permitted transfer of more than $300,000.00 to the IOLA account of the escrow attorney, Morris Barenbaum.

24. Those funds were to be placed in escrow and used only for purposes of the SBLC transaction.

### Defendants Take the Money ... but Provide No SBLCs

25. Unfortunately for Richfield, the entire transaction was nothing but a fraud designed by the defendants to obtain hundreds of thousands of dollars from Richfield, and to then disclaim any responsibility or liability for their theft.

26. Upon information and belief, Morris Barenbaum disbursed the funds, in willful and complete disregard of the Marko Agreement and the terms of the transaction, without confirmation that Marko had fulfilled its role in the transaction, without confirmation that Marko had submitted any "co-application" with Corban for issuance of an SBLC, without confirmation that Marko had "provide[d] its assets to support the SBLCs" – all as required by the Marko Agreement.

27. Barenbaum not only disbursed those funds without having confirmed that any of the obligations of Marko Capital had been met but also did so with payments that bore no relation to the purported transaction with plaintiff and instead were to and for the direct and personal benefit of the defendants.

28. On information and belief, Barenbaum failed properly to perform his duties as escrow agent including failing properly to segregate, safeguard and maintain the plaintiff's funds until the defendant complied with its obligations and failing to maintain complete and entries associated with the receipt and the disbursement of funds.

6

29.    Through his conduct, Barenbaum violated the New York Rules of Professional Conduct § 1.15 et seq.

30.    After receiving the plaintiff's money, defendant Marko through its agents Tiberi and Binet repeatedly claimed that the transaction was simply delayed and that Richfield should "relax." In response to Richfield's demand in February for the return of its money, Binet continued to insist and represent on behalf of Marko that they had completed the arrangements for the issuance of the SBLCs and were "ready to issue a 24 M financial instrument from Deutsche Bank, Frankfurt Germany." Exhibit B: Letter dated February 10, 2012, from Marko Capital signed by David Binet.

31.    Agents of Marko also, in March of 2012, provided to the plaintiff various bank documents that they claimed demonstrated their ability to complete the transaction. On information and belief, those documents had nothing to do with the defendants or the Marko Agreement and were provided as part of a scheme to defraud the plaintiff.

32.    Again, after all of those repeated assurances, defendants failed to provide any SBLCs and continued to make excuses for delays in the transaction.

33.    In or about April 2012, Richfield's representatives spoke with Solomon Markowitz to demand return of the funds that were taken. Markowitz initially and falsely denied any knowledge of or involvement with Tiberi, Binet and Barenbaum or any knowledge of monies received by Barenbaum.

34.    Markowitz later acknowledged that he did in fact know and work with Tiberi, Binet, Barenbaum and others, and even that he had personally received $175,000 of the plaintiff's funds, but claimed that he was not responsible for Richfield's losses because his actual signature does not appear on the agreement. Mr. Markowitz insisted that it was Barenbaum, and

7

not he, who would be responsible for the loss of the funds. Markowitz also suggested that he would be willing to arrange for the issuance of a $5 million SBLC if the plaintiff paid him *another $175,000.00.* In an attempt to defraud Richfield out of even more money, he forwarded to the plaintiff various documents relating to his claims that he had the ability to obtain such a letter of credit.

35.    Demand was also made of Mr. Barenbaum for return of the amounts taken from and owed to the plaintiff. Mr. Barenbaum denied that he was responsible for the plaintiff's losses.

130519795v1  2033

**FIRST CAUSE OF ACTION**

**(Fraud Against Solomon Markowitz and Marko Capital)**

36.     Plaintiff repeats and realleges paragraphs "1" through "35" as if fully set forth herein.

37.     Defendant Solomon Markowitz, directly and through representatives and agents Arthur Tiberi and David Binet, knowingly made a series of misrepresentations of material facts to plaintiff including claiming that they had previously and successfully engaged in transactions involving SBLCs; that Marko Capital had assets sufficient to support the issuance of SBLCs in the total amount of $24 million; that Marko would serve as co-applicant and thereby obtain the SBLCs; that Marko Capital had made arrangements with and "confirmed with Deutsche Bank" its willingness to issue the SBLCs that were the subject of the agreement with the plaintiff; and that Marko Capital was "ready to issue a 24 M financial instrument from Deutsche Bank."

38.     These statements were made either directly to Richfield or to its agent, Corban Ventures, with the intent those statements be communicated to and relied on by Richfield.

39.     Upon information and belief, defendants knew that their statements were false at the time that they made them and they engaged in the conduct for the purpose of defrauding Richfield and obtaining money for themselves.

40.     Defendants also failed to disclose information as to which they had superior knowledge including prior criminal and regulatory proceedings against Arthur Tiberi, as well as their prior failures to procure SBLCs for any client or counterparty.

41.     Defendants' conduct was egregious, and defendants engaged in this conduct willfully and deliberately, with wanton dishonesty and criminal indifference to the damages that

130519795v1 2033

would be incurred by the plaintiff, for the purpose of inducing the plaintiff to transfer funds to and for the benefit of themselves and their associates.

42.     Plaintiff justifiably relied on the defendants' false representations in entering into the SBLC transaction and agreeing to transfer funds in connection with the SBLC transaction.

43.     As a direct and proximate result of defendants' fraud, plaintiff was damaged because of the loss of those funds as well as the costs associated with that transaction and with the need to obtain alternative financing.

44.     By virtue of these circumstances, defendants are liable to plaintiff for compensatory and punitive damages in an amount in excess of $1 million.

## SECOND CAUSE OF ACTION

### (Breach of Contract Against Marko Capital Corp. and Solomon Markowitz)

45.     Plaintiff repeats and realleges paragraphs "1" through "44" as if fully set forth herein.

46.     Plaintiff entered into a purported agreement with Marko Capital Corp. pursuant to which Marko represented that it had confirmed with Deutsche Bank its willingness to issue SBLCs in accordance with the terms set forth in the agreement, that it possessed and agreed to provide assets to support $24 million in SBLCs, that it would act as co-applicant to obtain those SBLCs, and that two SBLCs would be obtained in the amounts of $5 million and $19 million.

47.     Richfield, through Corban, agreed to pay a substantial amount to an escrow attorney to be used to obtain the SBLCs, pursuant to Exhibit D to the Marko Agreement.

48.     In accordance with the terms of that agreement, Richfield paid to Corban a total of $350,000, and Corban paid approximately $325,000 to an IOLA account held by the attorney designated by defendant Marko, Morris Barenbaum.

10

49.     Plaintiff fully performed its obligations under the agreement, causing a transfer of more than $300,000 to be used in relation to the issuance of the SBLCs.

50.     Defendants Marko Capital and Solomon Markowitz failed to comply with their obligations under the agreement.

51.     Solomon Markowitz owns, controls and employs Marko Capital for his own purposes and to commit this fraud, disregards corporate formalities, undercapitalizes the entity in light of its agreements and activities, uses the corporate funds for his own personal benefit, personally participated in the breach by the corporation of its agreement with plaintiff, stands as the alter ego of that entity, and is liable for the damages caused by the breach of Marko Capital Corp..

52.     By virtue of the foregoing, Marko Capital has breached the agreement with plaintiff and defendants Marko Capital Corp and Solomon Markowitz are liable to plaintiff for damages in an amount in excess of $350,000 plus interest, attorney's fees and costs.

### THIRD CAUSE OF ACTION

**(Breach Of Fiduciary Duties
Against Morris Barenbaum)**

53.     Plaintiff repeats and realleges paragraphs "1" through "52" as if fully set forth herein.

54.     Morris Barenbaum agreed to serve as the escrow agent in relation to the Marko Agreement, and to receive and disburse plaintiff's funds only in accordance with his role as the escrow agent in that transaction.

55.     Plaintiff placed trust and confidence in the fidelity and competence of Morris Barenbaum as escrow agent, and transferred its funds with the expectation and understanding

130519795v1  2033

that the funds would only be used for purposes of the SBLC transaction and would only be disbursed in accordance with the Marko Agreement.

56.     Defendant Barenbaum, having received the plaintiff's funds in its capacity as escrow agent, had a fiduciary duty to the plaintiff in relation to those Escrow Funds.

57.     Defendant Barenbaum also had superior knowledge as to Markowitz's and others propensity to engage in fraudulent conduct, having previously been involved with defendants and their associates in relation to other fraudulent transactions.   As a result, defendant Barenbaum had an even more stringent duty to act to ensure that the plaintiff's funds were disbursed only in relation to and for the purpose of the SBLC transaction.

58.     Instead, in breach of the escrow and without regard for the terms of the Marko Agreement or his obligations as escrow agent, Barenbaum disbursed the plaintiff's funds directly to or for the personal benefit of defendant Markowitz and his associates.

59.     On multiple occasions during the period April through December 2012, plaintiff demanded from Mr. Barenbaum the return of those funds, and Barenbaum refused to repay those amounts.

60.     As a direct and proximate result of the defendant Barenbaum's breach of his fiduciary duties, the plaintiff suffered damages in an amount in excess of $350,000.00.

## FOURTH CAUSE OF ACTION

### (Unjust Enrichment against Solomon Markowitz and Morris Barenbaum)

61.     Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "60" as if fully set forth herein.

12

62. Defendants Markowitz and Barenbaum each wrongly obtained funds of the plaintiff that were transferred based on representations of the defendants and for the purpose of the SBLC transaction.

63. Defendants' receipt and retention of those amounts has unjustly enriched the respondents.

64. Defendants have no basis for retaining those amounts.

65. These amounts have been demanded but not paid.

66. By virtue of the defendants' conduct, these defendants have been unjustly enriched in an amount in excess of $350,000.00.

## JURY DEMAND

67. Plaintiff demands a trial by jury of all issues arising in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

For a judgment in Plaintiff's favor and against Defendants as follows:

A. On the First Cause of Action against Solomon Markowitz and Marko Capital, compensatory and punitive damages in excess of $1 million;

B. On the Second Cause of Action against Solomon Markowitz and Marko Capital Corp., damages in an amount in excess of $350,000.00 plus interest, attorney's fees and costs;

C. On the Third Cause of Action against Morris Barenbaum, damages in an amount in excess of $350,000.00; and

D. On the Fourth Cause of Action against Solomon Markowitz and Morris Barenbaum, damages in an excess amount $350,000.00.

E. The costs and disbursements incurred in this action.

130519795v1 2033

F.   Such other and further relief as the Court deems just and proper.

Dated:      New York, New York
            February 26, 2013

                                    HINSHAW & CULBERTSON LLP

                                    By:/s/ Maranda E. Fritz
                                      Maranda E. Fritz - 8060
                                    780 Third Avenue
                                    New York, New York 10017
                                    Tel: (212) 471-6200
                                    Fax: (212) 935-1166

                                    *Attorneys for Plaintiff*
                                    *Richfield Oil& Gas Company*

130519795v1 2033

# LETTER AGREEMENT

This Agreement ("Agreement") is entered into this 20th day of January, 2012 by and between Corban Ventures LLC, an Indiana limited liability company, represented by James Helfer, its President ("Corban") and Marko Capital, Inc. a New York corporation, represented by CSS Capital LLC, a New York limited liability company as Agent for Marko and represented by Mr. Arthur Tiberi, is Manager ("Marko")

## RECITALS

WHEREAS; Corban is in need of obtaining two Standby Letters of Credit (SBLC's) as described below for the purposes of funding a fully secured loan to Richfield Oil & Gas Company, a Nevada corporation with funds used for working capital and pre-IPO leasehold acquisitions; and

WHEREAS;  Marko has agreed to provide the assets to support the SBLC's and to act as a co-applicant with Corban in issuing such SBLC's; and

WHEREAS; Marko has previously confirmed with Deutsche Bank, Germany, or other financial institution as mutually agreed ("Issuer") the Issuer's willingness to issue the SBLC's in accordance with the terms and timeframes herein; and

NOW, THEREFORE, the parties hereby agree as follows:

### 1. Responsibilities of Marko

Marko agrees to apply with Corban, as co-applicant for two SBLC's for which shall serve as loan security for a credit facility described in Exhibit A.  These SBLC's shall be made available to Corban in the amount of Five Million U.S. Dollars ($5,000,000.00) as described in Exhibit B and Nineteen Million U.S. Dollars ($19,000,000.00) as described in Exhibit C. The SBLC's will expire 366 days from being issued and shall be renewable for at least one additional year at the discretion of Corban.

### 2. Responsibilities of Corban

In consideration of the role of Marko as described herein, Corban will pay a fee of Thirteen Percent (13%) of the face value of each of the SBLC's as compensation to Marko for placing their underlying capital at risk for the issuance of the SBLC's.  Corban will be supplied with a Five Million U.S. Dollars ($5,000,000.00) SBLC with a cost of $650,000 (Six Hundred Fifty Thousand U.S. Dollars ($650,000.00).  The Fee shall be paid into the escrow account with timing as described in Exhibit D.

Corban guarantees to either the return of the SBLC's, without presentment to the issuer for payment or to pay the face amount of the SBLC upon its expiration to Marko in ready funds.

### 3. Renewal Fees.

Corban may renew the term of the SBLC for a fee not to exceed twelve percent 12% of the face amount of the SBLC being renewed.

### 4. Confidentiality.

It is understood that during the Term of this Agreement, Marko and Corban may be exposed to documents, information and materials which are confidential and proprietary to the other party ("Confidential Information"). All Confidential Information, whether written, verbal, electronic, tangible or intangible, made available, disclosed or otherwise made known to Marko under this Agreement shall be considered strictly confidential, and shall be considered the sole property of the originating party. Neither Marko nor Corban will reveal, publish or otherwise disclose any such Confidential Information to any third party without the prior written consent of the other party. The duty of confidentiality in this section shall not apply to disclosure of Confidential Information: (a) which either party can demonstrate from written records was previously known to it; (b) which is publicly available other than by breach of this Agreement; (c) which is lawfully disclosed on a non-confidential basis by a third party who is not obligated to either party to retain such information in confidence.

### 6. Term.

This Agreement shall commence on the 20th day of January, 2012 and shall terminate on the expiration, inclusive of renewals of the SBLC's.

### 7. Notice.

All notices to be given by either party hereunder shall be in writing and shall be delivered by hand or by United States certified mail, postage prepaid, to the address of each party.

### 8. Cancellation.

Marko and/or Corban may terminate this agreement under the following terms:

    a. in the event of attempted circumvention by either party the detriment of the other party
    b. Any misrepresentation of the contractual arrangement between Marko and Corban
    c. Any identity misrepresentation
    d. Failure of the Issuer to transmit the SWIFT MT-760 or MT-700 message within 3 business days of the execution of this agreement and funding of the escrow account by Corban, the Corban is then entitled to a full refund.

## 9. Verification

Marko will ensure that the Issuer shall reply to attempts to verify and confirm the SBLC's Recipient Institution Any person or entity calling to verify by phone must have the proper information and proper authorization for verification as Marko and SBLC Marko do not arbitrarily release information regarding account status or account holder. The SBLC Marko agrees, full verifications must be done by receiving bank. The SBLC Marko agrees to answer full communications from the receiving bank. SBLC Marko will only verify the account and will not discuss any other information with any other individual or entity regarding the SBLC account and will not participate in discussions, meetings or conference calls such as "Project Discussions", "Trade Discussions", "Joint Venture Discussions", "Discussions with Lenders", "Planning Meetings", "SWIFT Recipients" or such like with any party that is not the signatory on this agreement. The Corban fully understand and agrees that there are absolutely no "Special Circumstances" nor exclusions regarding such discussions. Corban acknowledges that Marko and SBLC Marko will not participate in discussions with Corban's joint venture party, partners, prospective partners, traders, or financial backers as it is not the responsibility of the Marko or the SBLC Marko to do so. Corban acknowledges that Marko and SBLC Marko WILL NOT discuss verbally, or in writing, anything other than verifying the existence of the SBLC to the verifying party. The Corban expressly acknowledges that it has read and understood the terms and conditions contained in this paragraph.

## 10. Transferability.

The Corban may transfer or add additional parties to the SBLC at anytime. The SBLC is transferable, assignable and divisible.

## 11. Miscellaneous.

11.1 Entire Agreement and Amendments. This Agreement constitutes the entire agreement of the parties with regard to the subject matter hereof, and replaces and supersedes all other agreements or understandings, whether written or oral. No amendment or extension of the Agreement shall be binding unless in writing and signed by both parties. No party associated with the Corban whether they are friend, associate, investor, financial backer, joint venture partner, co-owner, family member, agent, advisor, mentor, or anyone other than the Corban who signed below, shall have any rights or claims to this agreement and therefore shall not be addressed by the Marko or the SBLC Marko. No claimed ambiguity in this agreement shall be construed against any party claimed to have drafted or proposed the language in question.

11.2 Binding Effect, Assignment. The covenants and conditions contained in this Agreement shall apply to and bind the parties but not the heirs, legal representatives, or successors of the Parties.

**11.3 Governing Law, Severability.** The laws of the State of Indiana shall govern this Agreement. The invalidity or unenforceability of any provision of the Agreement shall not affect the validity or enforceability of any other provision.

**11.4 Release of Liability.** For good and valuable consideration provided by Marko's referral to Depositors IAW Section 1, the receipt and sufficiency of which is hereby acknowledged by all parties, the Corban(s) and/or Person(s), and his/her agents, assigns, employees, Corbans, representatives, and any and all other persons, firms and whatsoever does hereby indemnify, release, acquit, hold harmless, and forever discharge Marko, successors, agents, assigns, employees, representatives, and any and all other persons and firms whatsoever, from any and all claims, demands, damages, actions, causes of action, or suits of any kind or nature whatsoever, both known and unknown, specifically including but not limited to this agreement, the MOU, Escrow Agreement, and Funding/Lending Contract/Agreement or the use or misuse of the products obtained as a result of this agreement, failure of the Depositors to provide said services, or failure of the Marko to meet requirements of the Corban intended use. The terms of this Release are contractual and are not a mere recital. Should it develop that there are any errors, mistakes or any omissions in this Agreement, whether legal or factual and whether mutual or unilateral, which would cause the release of the Parties herein released to be defective or less than complete, then the Corban will sign any and all documents and do any and all things necessary to effectuate a full, final and absolute release of said parties and all others having any liability in the premises. This provision (11.4) survives termination of this Agreement.

**11.5 Mandatory Arbitration.** Any dispute under this Agreement shall be required to be resolved by binding arbitration of the parties hereto rather than the judicial process. It is understood that the Corban(s) and/or Person(s) waive any right to a jury trial or a trial in court. The parties understand that the rules applicable to arbitrations and the rights of parties in arbitrations differ from the rules and rights applicable in court. If the parties cannot agree on an arbitrator, then the arbitrator chosen by the Marko shall arbitrate said dispute. The arbitration shall be governed by the rules of the American Arbitration Association then in force and effect. The decision of the arbitrator shall be binding and final. This provision survives termination of this Agreement and remains in full effect indefinitely.

**11.6 Additional Disclosures.** Marko warrants and represents that it does not run Private Placement Programs, High Yield Investment Programs or engage in any form of trading in securities. Marko and SBLC Marko make no warranty as to the acceptability of or otherwise the terms of the SBLC for such programs. Marko does not wish to partner, broker, or assist in Corban's transactions regarding this type of programs. Other than providing the SBLC, any and all transactions involving this SBLC and/or SBLC holder shall be deemed third party transactions and therefore Marko shall not be considered to be involved whether it be a participant, principle, or agent of any sort whatsoever.

**11.7 SWIFT.** Swifting is included in cost of the SBLC and will not be a separate cost to Clients that wish to have SWIFT messages sent. This Agreement is between the Corban and Marko and therefore Corban agrees that under no circumstance may it nor anyone

associated with the Corban or Corban's transaction communicate with the entity sending the SWIFT, as they are not a party to this transaction. Violation of this will result in immediate termination of this contract.

**11.8 Due Diligence.** Corban has to be a professional who is familiar with the use such a SBLC and the terms and structure associated with this particular SBLC. Corban acknowledges and agrees that Marko or SBLC Marko does not bear the responsibility to educate or provide advice as to how Corban can incorporate such a SBLC into their financial plans. Corban expressly acknowledges that it has read and understood the terms and conditions contained in this paragraph.

**11.9 Non Circumvention.** Corban acknowledges that Marko has/will introduce associates and affiliates to Corban, and agrees that it's officers, directors, employees, representatives, successors, permitted assigns and affiliates will deal only through Marko and not directly or indirectly with any or all party(s) introduced by Marko in connection with Marko participation in such transaction, without the prior written and signed consent of Marko. Marko acknowledges that Corban may introduce Marko to its sources and Marko agrees that its officers, directors, employees, representatives, successors and assigns will deal only through Corban and not directly or indirectly with a party introduced by Corban in connection with Marko participation in a Transaction, without the prior written and signed consent of Corban. The terms and conditions agreed upon in this paragraph shall be valid for a period of 5 years. This agreement shall be binding on the parties, hereunder signed, their successors, heirs, and assigns buyer, and/or seller or their agent. Facsimile copies are considered to be legal documents. If any part of this agreement is found to be unenforceable under law; such unenforceability shall not affect the enforcement of the remaining provisions of this agreement. Enforcement of this agreement shall be under the laws of the state of the circumvented party and/or Federal Court when applicable.

## 13. Other Requirements

The SBLC's will be rendered to Corban upon verification of all required fees being deposited into the agreed upon account.

Any duly signed facsimile or electronic transmission of the Agreement shall be deemed to be valid and enforceable as if it were the original and shall be legal and binding upon all parties.

and/or seller or their agent. Facsimile copies are considered to be legal documents. If any part of this agreement is found to be unenforceable under law; such unenforceability shall not affect the enforcement of the remaining provisions of this agreement. Enforcement of this agreement shall be under the laws of the state of the circumvented party and/or Federal Court when applicable.

### 13. Other Requirements

The SBLC's will be rendered to Corban upon verification of all required fees being deposited into the agreed upon account.

Any duly signed facsimile or electronic transmission of the Agreement shall be deemed to be valid and enforceable as if it were the original and shall be legal and binding upon all parties.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed effective as of the day and the year first above written

**Corban Ventures LLC**

By: James E. Helfer
President

**Marko Capital Inc.**

By: Arthur Tiberi, CSS Capital LLC as authorized for Marko Capital Inc.
Managing Member CSS Capital LLC

## Exhibit A

| | |
|---|---|
| BUSINESS NAME: | TEISZMANN ELEKTROMOTOREN AG |
| REGISTRATION NUMBER: | CH170.3.021.923-1 |
| ADDRESS: | BAARERSTRASSE 86CH-6302 ZUG |
| | SWITZERLAND |
| PHONE: | +41 (78) 667 6528 |
| DIRECTORS: | MR. DANIEL SCHNEIDER |
| | PASSPORT NUMBER 699003621 (GERMANY) |
| | |
| | MR. ANDREAS URESCH |
| | PASSPORT NUMBER C4WVPKYL6 |
| | (GERMANY) |
| BANK NAME: | VOLKSBANK AG |
| BANK ADDRESS: | 73207 PLOCHINGEN |
| | AM FISCHBRUNNEN 8, GERMANY |
| | |
| SWIFT / BIC: | GENODES1VBP |
| BANK OFFICER: | MS. JENNIFER BOGSCH |
| | MR. UWE KAST |
| BANK OFFICE PHONE: | +49 (0) 7153/706-147 |
| BANK OFFICE FAX: | +49 (0) 7153/706-149 |
| BANK OFFICER E-MAIL: | |

JENNIFER.BOGSCH@VOLKSBANK-PLOCHINGEN.DE

UWE.KAST@VOLKSBANK-PLOCHINGEN.DE

| | |
|---|---|
| ACCOUNT NAME: | TEISZMANN ELEKTROMOTOREN AG |
| ACCOUNT NUMBER: | 0785767002 |
| ACCOUNT SIGNATORY: | MR. DANIEL SCHNEIDER |
| | MR. ANDREAS URESCH |

**Exhibit B**

*Specimen text of Standby Letter of Credit (to be delivered by MT 760 mode)*

We have taken note that you are prepared to grant a credit in an amount of $5,000,000 (Five Million US Dollars Only to TEISZMANN ELEKTROMOTOREN AG subject to our providing a Standby Letter of Credit.

In the event that you grant this credit, we, (Issuing Bank) hereby irrevocably undertake to pay to you on your first demand, irrespective of the validity of the said credit relationship and waiving all rights of objection and defence arising therefrom, any sum up to the maximum amount of

$5,000,000.00 (Five Million US Dollars)

including interest and incidental expenses, against your duly signed written request for payment or by authenticated SWIFT/Telex wherein you declare that the requested amount is due on account of the credit relationship and has not been paid.

Our Standby Letter of Credit remains in force up to (Date) and shall expire automatically and in full, irrespective of whether the present deed has been returned insofar as your written withdrawal is not in our possession at that time. Signed original letters and/or authenticated SWIFT messages and/or encoded faxes shall be deemed evidence of duly made withdrawals.

Claims and rights arising from this Standby Letter of Credit can only be assigned with our prior consent.

The total amount of this Standby Letter of Credit will be reduced by any payment effected by us hereunder.

The Standby Letter of Credit shall be governed by German law, place of jurisdiction is

For and on behalf of (Issuing Bank)

_____          _____
BANK OFFICER:                    BANK OFFICER:
TITLE:                           TITLE:

Page 1 of 1

Exhibit C

*Specimen text of Standby Letter of Credit (to be delivered by MT 760 mode)*

We have taken note that you are prepared to grant a credit in an amount of $19,000,000 (Nineteen Million US Dollars Only) to TEISZMANN ELEKTROMOTOREN AG subject to our providing a Standby Letter of Credit.

In the event that you grant this credit, we, (Issuing Bank) hereby irrevocably undertake to pay to you on your first demand, irrespective of the validity of the said credit relationship and waiving all rights of objection and defence arising therefrom, any sum up to the maximum amount of

$19,000,000.00 (Nineteen Million US Dollars)

including interest and incidental expenses, against your duly signed written request for payment or by authenticated SWIFT/Telex wherein you declare that the requested amount is due on account of the credit relationship and has not been paid.

Our Standby Letter of Credit remains in force up to (Date) and shall expire automatically and in full, irrespective of whether the present deed has been returned insofar as your written withdrawal is not in our possession at that time. Signed original letters and/or authenticated SWIFT messages and/or encoded faxes shall be deemed evidence of duly made withdrawals.

Claims and rights arising from this Standby Letter of Credit can only be assigned with our prior consent.

The total amount of this Standby Letter of Credit will be reduced by any payment effected by us hereunder.

The Standby Letter of Credit shall be governed by German law, place of jurisdiction is

For and on behalf of (Issuing Bank)

BANK OFFICER:                          BANK OFFICER:
TITLE:                                 TITLE:

# Exhibit D

**All payments shall be made to the following account:**

Morris Barenbaum IOLA
1100 Coney Island Ave
Brooklyn NY 11230
CHASE BANK
4901 13th Ave
Brooklyn NY 11219
ABA # 021000021
ACC # 401643874

| Date | Amount | Description |
|---|---|---|
| January 23, 2012 | $325,000.00 | At request of issuance of $5 million SBLC |
| Within 10 days of verification of SWIFT MT-760 issuance of SBLC | $325,000.00 | Final payment of initial issuance |
| Est. January 29, 2012 | $1,235,000.00 | At request of issuance of $19 million SBLC |
| Within 10 days of verification of SWIFT MT-760 issuance of SBLC | $1,235,000.00 | Final payment of second issuance |

# MARKO CAPITAL, CORP
## 5014 16th AVENUE
## BROOKLYN, NY 11204

February 10, 2012

Mr Jim Helfer
Corban Ventures

Dear Jim,

As requested by you we are ready to issue a 24 M financial instrument from DEUTSCHE BANK, Frankfurt, Germany to VOLKSBANK AG for Teiszmann Elektromotoren AG.

The Language will be as the attached instrument from Deutsche Bank.

Regards

David Binet